<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EMMANUEL CORTEZ, et al., | Civil Action No. 12-5659 (SRC) |
| Plaintiffs, | |
| v. | **OPINION** |
| MERRILL MAIN, et al., | |
| Defendants. | |

**APPEARANCES:**

> EMMANUEL CORTEZ, #154
> WILLIAM PALMER, #470
> East Jersey State Prison - S.T.U.
> CN-905
> Avenel, NJ   07001

<u>**CHESLER, District Judge**</u>:

Emmanuel Cortez and William Palmer, who are civilly committed to the Special Treatment Unit under the New Jersey Sexually Violent Predator Act, seek to file a Complaint asserting violation of rights under 42 U.S.C. § 1983 without prepayment of the filing fee.  This Court will grant Plaintiffs' applications to proceed *in forma pauperis*.  Having screened the Complaint, as supplemented by four letters, in accordance with the requirements of 28 U.S.C. § 1915(e)(2)(B), this Court will dismiss the federal claims raised in the Complaint and decline to exercise supplemental jurisdiction.

**I.   BACKGROUND**

Emmanuel Cortez and William Palmer bring this Complaint for violation of their constitutional rights under 42 U.S.C. § 1983 against Merrill Main, Clinical Director of the Special

Treatment Unit ("STU"); Mrs. Spagnolia, Program Coordinator; Shantay Adams, Assistant Unit Director; Mrs. Kearny, Program Coordinator; Steve Johnson, Assistant Superintendent; A. Valvano, Corrections Officer; and SCO Aponte, Corrections Officer.   (ECF No. 1 at pp.1-6.)

Plaintiffs assert the following facts in the body of the Complaint:

> On 4/14/11, the D.H.S. Director (Merril Main) has been sexually discriminating, humiliating and degrading me & my partner for over a year now . . . .   On 5/3/12, I received a response from the administrator of D.O.C. towards our having a civil union (res. Emmanuel Cortez #154/William Palmer #470) and approving our request "stating that it's our right to have a civil union."   But on 5/12/12, Dr. Merril Main - Clinical Director once again started discriminating against us. Causing the D.H.S. staff to inflict more mental punishment against/on us because of not giving up on needing to be united as one by having this civil union.
>
> Every [sic] since our asking to have a civil union, we have been degraded by some of D.H.S./D.O.C. staff towards our gender and lifestyle.   By boldly using derogatory statements towards our gay lifestyle* which is causing constant arguments, conflicts and mental frustration within this prison system (under the Civil Commitment Act).
>
> And when this mental torture is brought to Merrill Main attention, "I am always overlooked and dis-regarded."   Causing even more sexual humiliation and frustration.
>
> \*                         \*                         \*
>
> 9/1/12, I continuously put in grievances and make verbal complaints towards the derogatory statements, and D.O.C. getting other residents to constantly degrade me and my mate, because of our sexual gender and asking to have a civil union.   But nothing is never done or resolved.   Leaving us (E.C./W.P.) feeling humiliated and mentally tortured because of our togetherness, being gay.

(ECF No. 1 at 8-10.)

In addition, Plaintiffs describe what each defendant allegedly did to violate their rights. They assert that Merrill Main violated their rights by "causing and authorizing his D.H.S. staff to intimidate and therapeutically harass me and my mate.   For asking for a civil union, causing other residents and D.O.C. staff to sexually degrade us with no regards towards my treatment and mental

2

health."  (ECF No. 1 at 3.)   They allege that Program Coordinator Spagnolia violated their rights by "overlooking the sexual harassment that staff is giving me."   *Id.* at 4.   They contend that Assistant Unit Director Adams violated their rights by "dis-regarding the abuse that the D.H.S. is supplying/applying to me and my mate and overlooking her D.H.S. staff writing false reports on[] us causing conflict with residents and staff."   *Id.*   They assert that Assistant Superintendent Steve Johnson violated their rights by "failing to correct his correctional staff, abusing their authority by allowing them to constantly use degrading and derogatory statements belittling me & my mate['s] sexual gender."   *Id.*   They allege that CO Valvano violated their rights by "harassing and calling me a homo, fag, penis lover in front of the unit which holds 80 other residents."   *Id.* at 6.   They assert that Aponte violated their rights by "threatening and offering to do physical harm to us due to our life's gender saying that he will f—k our faggot asses up while other corrections officers w[ere] surrounding us."   *Id.*

Seven documents are attached to the Complaint.   Plaintiffs attached a Special Treatment Unit Request System & Remedy Form in which William Palmer asks about a civil union.   (ECF No. 1 at 11.)   The response, which is dated May 3, 2012, states:   "Regarding your request for a civil union, you absolutely can do it.   The Union will have no effect on housing, group assignments, etc."   *Id.*   The signature is not legible.   A May 3, 2012, memorandum from Steven Johnson to both Plaintiffs states:

> Recently, I received a remedy that indicated that I had not issued a formal answer regarding your request for a civil union.   This will serve as an official answer to your request.
>
> Your request for a civil union is within your rights.   The granting of the civil union will have no bearing on your status within the facility.   You are advised that the civil union will not have an effect on housing assignments, group assignments, etc.

3

>If you decide to move forward with the civil union you will need to make all of the arrangements. Once the arrangements are made you can request a cost analysis of what it will cost for transportation to get the license. You will need a court order for the transport. I have received this in the past from the public defenders. All monies will need to be paid before a trip will be scheduled.
>
>Let me know if you have any further questions.

(ECF No. 1 at 17.)

In another remedy request, Emmanuel Cortez asks if there is a problem with his entering into a civil union with "my mate [who] is a resident," and the response, dated May 10, 2011, from Ana Spagnolio, states: "As you & I have briefly discussed, you need to process this issue in process group." [1] (ECF No. 1 at 15.) In the next remedy request, Emmanuel Cortez asks for a response with respect to his same sex marriage or civil union with William Palmer, and by response dated May 10, 2012, Merrill Main states: "Mr. Cortez: We have been advised that you have a right to enter into a civil union. However, clinically we have advised against it for reasons that have been explained. That said, the facility will not be under obligation to make any particular housing changes." *Id.* at 13. In the next remedy request, Emmanuel Cortez states that he was never given a reason why the facility is not obligated to change housing, and on August 22, 2012, Merrill Main responded: "Mr. Cortez: The reasons for advising against the civil union were explained in treatment group and [are] too involved for here. You have the right to take or not take such advice. Briefly, this is not seen as an adequately healthy relationship. Re obligation to make housing changes: those are based on institutional need & clinical necessity." *Id.* at 14.

---

[1] Plaintiffs' submissions do not otherwise explain what is meant by "process group."

Plaintiffs seek the following relief in their Complaint: an injunction transferring Plaintiffs to "a federally funded civil commitment unit," appointment of a special master, and damages. (ECF No. 1 at 20.)

Plaintiffs thereafter submitted to the Clerk four supplemental pleadings which all concern a bedbug infestation at the facility. On September 15, 2012, Emmanuel Cortez submitted an 11-page addendum. (ECF No. 2.) Cortez asserts that the infestation began in C-Dorm in 2010, and then spread to A and B dorms, the dayroom, dining room, treatment rooms, and hospital area, even though exterminators had been spraying since May 12, 2010. Cortez further alleges that in January 2012, he "brought this serious issue up of being and having bedbug bites all over me [and] I was threatened to be placed on T.R. and my job be taken if I continue to complain." *Id.* at 1-2. Cortez states that a new exterminator began spraying all areas in July 2012, "but the bedbug problem continues to spread throughout the Annex facility because the infestation has gotten more serious." *Id.* at 2. Cortez alleges that after the spraying on August 12, 2012, and September 5, 2012, when he returned to his dorm, he began to feel dizzy, his throat closed up, and he had difficulty breathing, so he was admitted to the medical unit on each occasion. Cortez asserts that on September 7, 2012, he "spoke with Lt. J. Jones about my problems and he (Lt. J. Jones) stated that there's nothing that he can do." *Id.* at 4. He asserts that the exterminator sprayed again on September 12, 2012, and Lt. Jones had him moved to another building - the Ad-Seg-unit in East Jersey State Prison - which made it more difficult for him to attend therapy sessions in the Annex. *Id.* at 5-6.

Cortez submitted a second four-page addendum on October 8, 2012. (ECF No. 3.) Cortez asserts in this addendum that, although the spraying continued, "there is no end for this

5

infestation of bed bugs." (ECF No. 2 at 2.) He alleges that the residents brought the bedbug infestation to the attention of Steve Johnson and Merrill Main, and others on the administrative staff, and asked them to "isolate this resident in cell #212" who had a severe infestation, but CO Banks and Alexander "dis-regarded his request." *Id.* at 3.

The third addendum from Cortez is dated October 19, 2012. (ECF No. 4.) Cortez asserts that officials held a community meeting on October 11, 2012, and Steve Johnson stated that certain areas (bathroom, in-house court room, hospital area, visiting hall and treatment rooms) would be sprayed once a month. Cortez maintains in this addendum that "the resident welfare fund account, doesn't have enough finances to cover the cost of keeping the 'Vaco Exterminators' from trying to keep the bedbugs from spreading even more rapidly." *Id.* at 2. Cortez alleges that on October 14, 2012, the resident of cell #212 removed all property from his cell, but the infestation continued and even got worse. Cortez asserts that the exterminator sprayed on October 17, 2012, and on that date Cortez verbally complained to Steve Johnson. *Id.* at 4. Cortez contends that the bedbug "spray is not [effective] enough to eliminate the problem and is causing more harm to us residents then what the purpose of the spray is for." *Id.* at 6.

Cortez thereafter submitted an affidavit requesting the appointment of counsel. (ECF No. 6.) Cortez attached three administrative remedy requests he allegedly submitted to officials on November 9, 2012, but none are legible.

## II.  STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding *in forma pauperis* or a prisoner is seeking redress against

6

a government employee or entity, and to *sua sponte* dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

To survive dismissal "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).   The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.   Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and will be dismissed.   *Id.* at 678 (citations and internal quotation marks omitted); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief*.   A complaint has to "show" such an entitlement with its facts") (emphasis supplied).   The Court is mindful, however, that the sufficiency of this *pro se* pleading must be construed liberally in favor of the plaintiff, even after *Iqbal*.   *See Erickson v. Pardus*, 551 U.S. 89 (2007).

### III.   DISCUSSION

A.   Civil Union

Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to

7

> the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

To the extent that Plaintiffs seek to assert a § 1983 claim with respect to their desire to enter into a civil union, the claim fails because, on the facts alleged in the Complaint, defendants did not deny or prevent Plaintiffs from entering into a civil union. Rather, the documents attached to the Complaint show that, while certain defendants did not consider the civil union to be therapeutically beneficial, defendants informed Plaintiffs that it was their right to enter into a civil union. Under these circumstances, without deciding that Plaintiffs have a constitutional right to enter into a civil union, this Court will dismiss the § 1983 claim because defendants did not deprive Plaintiffs of any right to enter into a civil union.

B.   Equal Protection

Plaintiffs further complain that defendants violated their right to equal protection of the laws by failing to prevent subordinates' use of verbal abuse and language derogating Plaintiffs' sexual orientation. The Equal Protection Clause " keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631, (1996).

In this case, Plaintiffs complain of verbal abuse with regard to their sexual orientation, but sexual orientation is not a suspect classification. *See Romer*, 517 U.S. at 631, 635. Moreover, "allegations of verbal abuse, no matter how deplorable, do not present actionable" equal protection claims under § 1983. *Ayala v. Terhune*, 195 Fed. App'x 87, 92 (3d Cir. 2006) (citing *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (holding that use of derogatory racial epithets does not violate the Fourteenth Amendment)). Although the Complaint alleges homophobic comments which, if true, are wholly unprofessional and reprehensible, they are not actionable under § 1983. As Plaintiffs allege no more than verbal abuse, this Court is constrained to dismiss the equal protection claim for failure to state a claim upon which relief may be granted. *Id.*[2]

C. Bedbugs

In his supplements to the Complaint, Cortez complains that his unit is infested with bedbugs and that repeated and systematic spraying by various exterminators over the course of time has not eradicated the bedbugs. This Court construes these allegations as an attempt to state a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment,

---

[2] *See also Hernandez v. Florida Dept. of Corrections*, 281 Fed. App'x 862, 867 (11th Cir. 2008) ("There is no fundamental right implicated, however, when an inmate is subjected to harsh words or vulgar language"); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) ("[A] petitioner must allege more than that he has been subjected to verbal taunts . . , [h]owever distressing in order to make a claim that jailers have . . . deprived the petitioner of his constitutional rights") (citation and internal quotation marks omitted); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (holding that allegations that "a guard ridiculed the color of his palms and told him to smile so that he could be seen in the dark" do not, "as a matter of law, amount to unconstitutional racial discrimination"); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000) ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution . Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws") (citations omitted); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) ("We hold today that an officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation . . . Where the conduct consists solely of speech, there is no equal protection violation").

which prohibits punishment of a non-convicted person.  *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components.   As the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* at 298 . . . .   The Supreme Court did not abandon this bipartite analysis in *Bell*, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

*Stevenson v. Carroll*, 495 F. 3d 62, 68 (3d Cir. 2007).

Prolonged infestation may be sufficiently serious to satisfy the objective component of a constitutional conditions of confinement claim.  *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (sixteen months of infestation coupled with significant physical harm satisfied objective component); *Kost v. Kozakiewicz,* 1 F.3d 176, 188 (3d Cir. 1993) (prison's dispensing of vermin infested bedding, which caused inmate's personal infestation, may establish and Eighth Amendment violation).   However, in this case, Plaintiffs' § 1983 conditions claim fails because their allegations show that defendants were not deliberately indifferent to the bedbug infestation.

To establish deliberate indifference, a plaintiff must set forth facts showing that the official "knows that [persons] face a substantial risk of serious harm and disregards that risk by failing to rake reasonable measures to abate it."  *See Farmer v. Brennan*, 511 U.S. 825, 47 (1994).   In this Complaint, as amended, Plaintiffs allege that exterminators conducted regular and frequent extermination in response to the bedbug infestation.   Because "officials who actually knew of a

10

substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted," *id.* at 844, and Plaintiffs' allegations show that officials took reasonable action in response to the bedbug infestation, on the facts alleged, defendants were not deliberately indifferent. *See Cruz v. Main*, Civ. No. 10-5605 (SDW), 2011 WL 3625068 at *4-5 (D.N.J. Aug. 15, 2011) (dismissing § 1983 claim brought by civilly committed sexually violent predator concerning bedbugs and other conditions of confinement for failing to satisfy objective and subjective components); *Gosciak v. Main*, Civ. No. 10-5822 (SDW), 2011 WL 2491348 at *6 (D.N.J. June 21, 2011) (dismissing SVP's § 1983 claim concerning bedbug infestation where allegations demonstrated that officials "employed a comprehensive extermination program to combat the bedbug infestation, including treatments as often as four times per week").[3]

Moreover, "[i]neffective efforts to eliminate the bedbug infestation at the [facility] amount to negligence, which does not satisfy the deliberate indifference standard." *Walters v. Al Bosher*, Civ. No. 10-1505 (RBK), 2011 WL 252954 at *4 (D.N.J. Jan. 25, 2011); *see also Davidson v. Cannon*, 474 U.S. 344 (1986) (holding that prison official's negligent failure to protect inmate from assault by another inmate because official mistakenly believed that the situation was not particularly serious, does not state a claim under § 1983); *Daniels v. Williams*, 474 U.S. 327 (1986) (holding that inmate who was injured when he slipped on a pillow negligently left on the stairs by deputy sheriff does not state due process claim under § 1983).

---

[3] *See also Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (SVP's allegations that defendant official knew of the infestation and failed to transfer him to a different unit did not state § 1983 claim because, where SVP's unit was regularly exterminated in response to complaints, official was not deliberately indifferent to infestation); *Johnson v. Pollard*, Civ. No. 08-0297, 2009 WL 3063327 at *14 (E.D. Wis. 2009) (where "defendants attempted multiple times and in various ways to get rid of the [infestation,]" there was no deliberate indifference).

Because the Complaint shows that defendants were not deliberately indifferent to the bedbug infestation, Plaintiff's allegations fail to state a § 1983 conditions of confinement claim. This Court will dismiss the § 1983 claims because the Complaint, as supplemented, fails to "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted).

D.   Amended Complaint

Although this Court generally grants leave to file an amended complaint, *see DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 251 (3d Cir. 2012); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000), given that Plaintiffs' allegations in the Complaint and numerous supplements are detailed, this Court will not grant leave to amend, since amendment would be futile.

E.   Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted).   Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.   28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).   In this case, the Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation

and declines to exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## IV.   CONCLUSION

Based on the foregoing, this Court will grant Plaintiff's application to proceed *in forma pauperis*, dismiss the federal claims raised in the Complaint, and decline to exercise supplemental jurisdiction.

s/ Stanley R. Chesler  
**STANLEY R. CHESLER, U.S.D.J.**

Dated:    April 29, 2013